Farmers & Mechanics' Ins. Co. *v.* La Rue, Auditor, etc.

[*General Term, April,* 1873.]

FARMERS AND MECHANICS' INSURANCE COMPANY *v.* GEO. S LA RUE, AUDITOR OF HAMILTON COUNTY.

ECLIPSE INSURANCE COMPANY *v.* SAME.

LAFAYETTE INSURANCE COMPANY *v.* SAME.

CRESCENT INSURANCE COMPANY *v.* SAME.

OHIO VALLEY INSURANCE COMPANY *v.* SAME.

Joint-stock insurance companies incorporated under the act of April 11, 1856 (1 S. & C. 360), and April 13, 1865 (S. & S. 228), were not taxable on the notes made by subscribers alone to the capital stock of such companies, for the unpaid *four-fifths* of their subscriptions, payable only as called for, and in the absence of any such call, they not being "credits" within the meaning of our tax laws, but only *possible* "credits."

They became taxable "at their true value in money," under and by virtue of the statute of May 7, 1869. 66 Ohio L. 325. But since this act, if any such company has dissolved and discontinued business, within a reasonable time after its passage, and has in no wise done business upon the faith or basis of such notes, and they are or have been in no manner required to meet or discharge any part of its business obligations, but have been canceled, such notes have not been subject to taxation at any time since May, 1869.

To the extent that such company may have realized from such notes a pecuniary value or benefit, since May 7, 1869, they are taxable at their true value in money for such purposes, though such company may dissolve and cancel all such notes as remain in its hands, within five years from July 1, 1869.

A determination of the rule since the passage of the act of 1873, not authorized by the facts involved in this case.

*Matthews & Ramsey,* for plaintiff.

*Scarborough & Williams,* for defendant.

YAPLE, J. All the above insurance companies, plaintiffs, were corporations, incorporated and organized as joint-stock insurance companies, under the statute of April 11, 1856 (1 S. & C. 361), each with an authorized capital stock of $100,000. Section 4 of that act provides that, "at the time of subscribing for stock in any company organized under this act, the person so subscribing shall pay the sum of four dollars in money on each share subscribed, and the balance on each share shall be subject to the call of the directors, *secured* to their approval by *indorsed notes*, payable on demand, or by other *other property* or stocks."

The stockholders' obligations to pay the unpaid four-fifths of their respective subscriptions, were in this form:

"$——                    CINCINNATI, ——, 18—.

"On demand, —— promise to pay to the —— insurance company the sum of —— dollars, for value received, the same being a balance due on —— shares of the capital stock held by —— in said company, subject to the call of the board of directors, in whole, or in such installments as may be required to meet their liabilities." See also S. & S. 228.

Each of such obligations was signed by the subscriber for stock alone.

Section 10 of that act provided that, "it shall be lawful for such company to loan or invest any part of its capital stock, money, or other funds, in such way as the directors shall deem best for the safety and interest of the stock-holders, and to sell, transfer, and dispose of any interest which the company may have acquired by any such loan or investment."

The constitution of the state (art. 12, sec. 2) provides that, "laws shall be passed taxing by a uniform rule all moneys, *credits*, investments in bonds, stocks, *joint-stock companies*, or otherwise," etc.

The term "credits" was incorporated into the constitution with the meaning which prior laws of the state had given it.

" The term credits  .  .  .  shall be held to mean and include every claim or demand for money, labor, or other valuable thing due, or *to become due*," etc.   44 Ohio L. 85 ; and see 2 S. & C. 1439, 1440, sec. 21.

Section 16 of the tax law of 1859 (2 S. & C. 1446), enacts that, " the president, secretary, or principal accounting officer of " (every) " joint-stock insurance company for whatever purpose (it) may have been created  .  .  .  shall list for taxation  .  .  .  all the moneys and *credits* of such company or corporation, within the state, at *the actual value* in money," etc.   See also S. & S. 756.   Section 2 of the act of 1859 permits individuals to deduct certain classes of their debts from their credits, etc. ; but provides that, " in making up the sum of such debts owing, there shall be taken into account no obligation to any mutual insurance company, nor any *unpaid subscription* to the capital stock of any *joint-stock* company," etc.   And section 10 of the same act (2 S. & C. 1444) provides that " no person  .  .  .  shall be entitled to any deduction on account of any bond, *note*, or obligation of any kind,  .  .  .  on account of any unpaid subscription to  .  .  .  the capital stock of any company, whether incorporated or not."   And section 6 requires every person to list for taxation all his " investments in stocks and joint-stock companies."

Under these statutes, until in 1869, when an additional statute was passed (presently to be noticed), unpaid notes given by the subscribers alone, for subscriptions to the stock of joint-stock insurance companies, incorporated under the laws of 1856, were never sought by the state authorities to be taxed.   The promisor could not deduct them from his credits, as he might do in the case of his debts, and return only the excess of credits for taxation, while the statute provided for this in the case of debts and credits.   The rule of taxation was designed to be uniform, and certainly did not intend to discriminate against any class of debtors or creditors.   The state can not be held to have been hostile to what it created and authorized.   The

obvious construction of this legislation is, that such notes were not the actual debts of the makers, and hence only the *possible* or *contingent* " credits" of the corporations. Perhaps, no part of the money would ever be required to be paid, and they were, therefore, neither " credits" nor " debts," within the meaning of the tax laws.

But, on May 7, 1869 (66 Ohio L. 331, sec. 39), the legislature enacted that " any company heretofore organized under any law of this state, . . . which has taken notes or obligations of its stockholders for any portion or portions of the amount subscribed by them to its capital stock, . . . shall, within five years from the first day of July, A. D. 1869," collect and invest the whole amount thereof, now or hereafter payable to any such company on stock notes or obligations, the investment *to be as* required in the sixth section of this act; "and any company failing to comply with any of the provisions of this section shall forfeit its charter." The section also required such companies, in the meantime, to retain and apply upon such notes or obligations fifty per cent. of all dividends declared until the same should be fully paid.

After the passage of this act, it was held by this court, in the case of *The Farmers' Insurance Co.* v. *La Rue*, 2 Cin. Sup. Ct. Rep. 236, which decision has been affirmed by the Supreme Court (S. C., 22 Ohio St.   ), that such notes became taxable at their true value in money, as " credits" in the case of an insurance company, continuing and designing to continue in existence, and to prosecute business under and according to the terms of its charter.

Originally the suits of all these plaintiffs were based upon the same state of facts as that of *The Farmers' Insurance Co.* v. *La Rue*.

The actions were, all brought in July, 1870, to restrain La Rue, as auditor, by injunction, from listing such notes for taxation.

Afterward, November 7, 1872, the present plaintiffs filed amended petitions, the Farmers and Mechanics' Insurance

Company alleging, "that it has discontinued the business of insurance and all other business, and has not collected, and does not intend to collect, any portion of said notes, but has returned them all to the makers." This answer is fully sustained by the evidence given at the trial of the cause.

The evidence establishes that, on the 16th day of September, 1870, this plaintiff ceased to do business as an insurance company, and returned all its stock-notes in January or February, 1871, amounting to eighty per cent., to wit, $80,000 of its authorized capital, to the makers thereof, there being no credits on any of such notes at the time of their surrender.

In the other cases, the amended petitions state that the companies " have discontinued the business of insurance, and all other business, and have not collected, and do not intend to collect, any portion of said notes, *but will return them to the makers upon the termination of this action."*

The Eclipse Insurance Company makes proof that it discontinued and retired from business on the 8th day of January, 1872; that all its stock-notes, amounting to eighty per cent. of its capital stock, to wit, $80,000, have been since placed in the hands of a committee (agents) of the plaintiff, and the committee has put them, for safe-keeping, in the Safe Deposit Company of Cincinnati, and that no assessments or payments have been made upon said notes, and none will be necessary to meet the company's liabilities.

The Ohio Valley Insurance Company proves that it discontinued business—dissolved—on the 3d day of January, 1872. The stock-notes of the company on hand, *at that time,* were $49,240, which are now in the Safe Deposit Company, and that the notes were originally for $80,000, and had been reduced to the amount stated by dividend, and some few, perhaps one or two, by payment.

The Lafayette Insurance Company proves that it quit business on the 3d day of January, 1871; that the amount of the stock-notes was originally $80,000, but, before that

time, had been reduced by a dividend to $70,000; that two calls upon the makers of the notes to pay losses—one of ten and the other of fifteen per cent.—were made upon this last amount due on these notes; and that the notes have been deposited in the Safe Deposit Company, and are yet there for safe-keeping.

Now, we hold that, prior to the act of May 7, 1869, such notes were not actual " credits," but only *possible* or *contingent* " credits;" that this act, by requiring all such to be paid, or collected in full within five years, made them absolute " credits " in the hands of every company continuing to do business with, or upon the faith and basis of such notes; that a company, so as not to be liable to taxation upon them, was not required by the act to dissolve and surrender them to the makers immediately, but only not to avail itself of them, in its business in any way, or to require them for the discharge of any of its business obligations; provided, that, within a reasonable time, or so soon as it could be settled by the courts whether such notes were taxable or not, if the company should continue in business, and thus obligate itself to collect them in full within five years, such company should dissolve and cancel such notes in full, no part of them being required to liquidate its previous business transactions.

It follows that no part of the notes of the Farmers and Mechanics' Insurance Company were taxable; no business has been transacted by it with or upon the faith of them since May 7, 1869; all has been done with other means, presumably paying a proper tax. It dissolved and canceled all these notes in September, 1870. As such notes are not necessarily to be taxed at their present worth as ascertained upon their face, but only " *at their true value in money,*" they have had no value since May 7, 1869. By the election of the company, which it had the right to make under the act of that date, within the time it did, the notes were of no value in money at any time after May 7, 1869. They were, therefore, not taxable at all.

But, in its original petition, the plaintiff did not state a case exempting the notes from taxation. It did so by its amended petition, the allegations of which it has sustained by proof at the trial. On this amended petition, the defendant took issue by denying all the facts alleged in it. From the time it was filed, and from that time only, has the auditor been in the wrong.

The plaintiff is therefore entitled to a judgment of perpetual injunction, but must pay all the costs.

The Eclipse Insurance Company does not prove that it has dissolved, but only that it has discontinued and retired from business. It has not canceled the stock-notes. They are in the hands of its agents, for what purpose the proof fails to disclose. It may to-morrow resume business, and proceed to collect these notes.

The Ohio Valley and Lafayette make out, upon the evidence, still weaker cases.

They show that they have made assessments and received payments upon these notes; and for aught they prove to the contrary, this may have taken place since the commencement of their actions. Neither do they say that the notes are in the deposit company for the makers. They may be held for the present or future benefit of these companies.

Any value measurable in money that they may have derived from such notes since May 7, 1869, renders them taxable to the extent of such true value in money, to be fixed at the time they should have been listed for taxation. Such are the cases they have made upon their proofs, and judgments must be rendered in their cases for the defendant.

The Crescent fails to make a case upon proof sufficient to overcome the denials of the answer. It has retired from business, but nothing is shown as to where the notes are, how much they amount to, or whether calls or payments have or have not been made upon them. This case does not call for a consideration of the act of 1873. Judgment will be rendered against it also.